**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert G. Furst & Assocs., Ltd. Defined Benefit Pension Plan,<br><br>Plaintiff,<br><br>vs.<br><br>ML Manager LLC,<br><br>Defendant. | No. CV-12-2304-PHX-FJM<br><br>**ORDER** |

The court has before it ML Manager's motion to dismiss, or alternatively to refer the case to bankruptcy court (doc. 9), Plaintiff's response (doc. 19), ML Manager's reply (doc. 18); Plaintiff's motion for partial withdrawal of the reference (doc. 13), ML Manager's response (doc. 14) and motion to strike (doc. 15), Plaintiff's reply and response to motion to strike (doc. 17).[1]

**I**

---

[1] Robert G. Furst appeared in this action as an attorney on behalf of the Furst Plan. Although once a member of the State Bar of Arizona, Furst was on inactive status and was suspended from practicing before this Court on the date this action was filed. Because a non-lawyer may not represent a trust, the magistrate judge issued an order for Furst to show cause why the action should not be dismissed. Furst responded that as of November 16, 2012, he was reinstated to active status by the State Bar of Arizona and re-admitted to practice in this Court (doc. 8). Therefore, Furst is now qualified to represent the trust.

Mortgages, Ltd. was a debtor in a case before the United States Bankruptcy Court for the District of Arizona, 08-BK-7465-PHX-RJH. Mortgages, Ltd. once held a $900 million loan portfolio backed by mortgages and deeds of trust ("ML Loans"). Over 1,800 individuals and entities invested in Mortgages, Ltd. by purchasing fractional interests in the ML Loans.

Plaintiff, the Robert G. Furst & Associates Ltd. Defined Benefit Pension Plan (the "Furst Plan"), is a retirement plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. The Furst Plan invested in fractional interests in the ML Loans. At the time of the investments, the Furst Plan, as well as the other investors, executed Agency Agreements designating Mortgages, Ltd. as their agent to manage and service their interests in the ML Loans. There is no dispute that by purchasing interests in the ML Loans, the Furst Plan subscribed to and agreed to be bound by the Agency Agreement. Given the nature of the fractionalized investments in the ML Loans, if a borrower defaulted on a loan and the property was foreclosed, the investors became part owners of the property as tenants in common with other investors who had interests in the same loans.

Mortgages, Ltd. filed for Chapter 11 bankruptcy on June 28, 2008. The bankruptcy court confirmed a plan of reorganization on March 20, 2009 ("Confirmed Plan"). The Confirmed Plan provided for the creation of ML Manager, LLC to manage, service, and liquidate the ML Loans. Mortgages, Ltd.'s authority under the Agency Agreements was transferred to ML Manager as the successor agent.

As part of the reorganization, most of the original investors transferred their interests in the ML Loans to 49 separate Loan LLCs, created to hold each of the ML Loans. Other investors, including the Furst Plan, chose not to transfer their interests to a Loan LLC ("Opt-out Investors"). These Opt-Out Investors continued to hold title and ownership in their fractional interests in their respective Notes and Deeds of Trust, but remained subject to the Agency Agreements.

Throughout the bankruptcy proceedings certain Opt-Out Investors have challenged ML Manager's authority under the Agency Agreements to act on their behalf. These

- 2 -

1  investors have taken the position that ML Manager cannot sell property in which they hold
2  an interest without their consent. Several adversary proceedings were initiated challenging
3  ML Manager's authority to sell property. In large part, these investors objected to the sale
4  of properties during the depressed real estate market. Arguments were made that Mortgages
5  Ltd.'s agency authority had been revoked; that the agency was not effectively transferred to
6  ML Manager; that ML Manger's attempt to sell properties was a breach of its fiduciary duty
7  and an improper exercise of business judgment; and so on. The bankruptcy court overruled
8  the objections, concluding that the Agency Agreements created an irrevocable agency
9  authority in Mortgages, Ltd. to manage investors' interests in the loans, and that Mortgages,
10 Ltd.'s authority under the Agency Agreements was effectively assigned to ML Manager
11 under the Confirmed Plan. The court concluded that ML Manager had the authority to
12 liquidate loan assets without Opt-Out Investors' consent.

## II

14 Four years after the Plan was confirmed, Plaintiff filed this action seeking a
15 declaration that (1) under ERISA, 29 U.S.C. § 1132, ML Manager is a "fiduciary" of the
16 Furst Plan because of its discretionary control over pension plan assets; (2) "no agency
17 relationship currently exists between ML Manager and the [Furst] Plan"; and (3) "ML
18 Manager does not have any authority over [Furst] Plan assets or any right to control, manage
19 or sell any [Furst] Plan assets." Compl. ¶ 40. The Furst Plan also seeks an injunction
20 preventing ML Manager from "controlling, managing or selling any assets of the [Furst]
21 Plan." Id. at 10. The Furst Plan argues that resolution of these issues "will be based solely
22 on ERISA and will have nothing to with bankruptcy law or the Confirmed Plan." Response
23 to MTD at 5. Notwithstanding the issues presented in its complaint, the Furst Plan denies
24 that it is challenging ML Manager's authority to manage ML Loans. Id. at 12 n.3.

25 ML Manager moves to dismiss the complaint, arguing that it violates the Confirmed
26 Plan and is barred by law of the case and res judicata.

## III

1    We deny Plaintiff's motion for withdrawal of the reference (doc. 13). The withdrawal 2 of a reference transfers a dispute from the bankruptcy court to the district court. Plaintiff 3 filed his complaint in the district court. The issues are already here. There is no reference 4 to be withdrawn with respect to these claims.

5    We also deny ML Manager's motion to strike (doc. 15) as not authorized under LRCiv 6 7.2(m). Finally, we grant ML Manager's motion to dismiss (doc. 9) for the reasons set forth 7 below.

8    We first conclude that the Plaintiff's complaint violates the Confirmed Plan, which 9 requires that all claims asserted "against the Debtor, the Reorganized Debtor, the Liquidating 10 Trust, the ML Loans, and the Investors" "arising out of or related to the [Confirmed] Plan" 11 "shall be commenced only in the Bankruptcy Court." Confirmed Plan ¶ 10.3. This court has 12 already recognized that "the ability to sell assets in the portfolio is a critical function of ML 13 Manager, essential to fulfilling its role following the reorganization of Mortgages, Ltd. to 14 keep the company afloat and ensure some eventual return to investors." Bear Tooth 15 Mountain Holdings v. ML Manager, LLC, 10-CV-1917-PHX-RCJ. The issues presented in 16 this case are effectively asserted against the ML Loans and the Investors, and challenge ML 17 Manager's fundamental obligation under the Confirmed Plan to liquidate the loans on behalf 18 of the Investors. These claims should have been filed in bankruptcy court.

19    We also reject Plaintiff's argument that because its issues are characterized as arising 20 under ERISA, mandatory withdrawal of the reference is required. First, as already stated, 21 there is no reference to withdraw with respect to these claims. But more importantly, 22 regardless of Plaintiff's characterization of its claims, Plaintiff is again challenging ML 23 Manager's agency authority with respect to the ML Loans. Because we conclude that this 24 action is an improper collateral attack on the final judgment of the bankruptcy court and this 25 court, the issues presented in the instant complaint can be resolved without reference to 26 ERISA.

27    It is well settled that a confirmed bankruptcy plan is a final order that precludes any 28 claims that were raised or could have been raised during the bankruptcy proceedings. In re

1 Heritage Hotel P'ship I, 160 B.R. 374, 377 (9th Cir. BAP 1993). The issue of ML Manager's
2 irrevocable agency authority has been decided by the bankruptcy court and affirmed by this
3 court on multiple occasions. See, e.g., Rev Op Group v. ML Manager LLC, 11-CV-0853-
4 PHX-RCJ (Jan. 10, 2012) (doc. 34 at 2-3) (affirming bankruptcy court's ruling that ML
5 Manager has agency authority, coupled with an interest in the subject matter, making it
6 irrevocable); see Restatement (Second) of Agency § 138 (1958).

      For example, in September 2009, four months after the confirmation of the Plan, a group of investors filed a motion seeking clarification that (1) ML Manager did not have authority over the fractional loan interests held by Opt-Out Investors, and (2) that these investors had no obligation to pay a share of the exit financing and other bankruptcy expenses. In Re Mortgages Ltd., 08-BK-7465-PHX-RJH (doc. 2323). The bankruptcy court rejected the investors' arguments, holding that ML Manager has "authority to deal with the loans and the collateral securing the loans to the extent provided by the governing documents including but not limited to the applicable subscription agreements and the Agency Agreements." The court also held that the Confirmed Plan granted ML Manager authority to charge back the investors their proportionate share of expenses so long as the charge back was fair, equitable, and proportionate. Again, in July 2010, the bankruptcy court entered a declaratory judgment in an adversary proceeding confirming ML Manager's irrevocable agency authority to act on behalf of the Opt-Out Investors. ML Manager v. Hawkins, 10-ap-0430-PHX-RJH (doc. 105).

      The Furst Plan itself has challenged ML Manager's Agency Authority throughout the bankruptcy proceedings, but it has not raised its ERISA argument until now. In May 2010, the bankruptcy court considered the Furst Plan's challenges to ML Manager's authority to act on its behalf. The bankruptcy court denied relief, concluding that "documents gave Mortgages Ltd. an agency power coupled with an interest, and that that power included the power to liquidate the properties that got recovered by foreclosure, and that extended to the . . . investors who did not consent to the granting of discretion. ML Manager's MTD, ex. A, May 27, 2010 Bankruptcy Hearing Transcript at 64-65.

- 5 -

Although the Furst Plan actively participated in the bankruptcy proceedings, it did not present its ERISA claims to the bankruptcy court, notwithstanding its ample opportunity to do so. Nor did the Furst Plan object to the Confirmed Plan or appeal from the Confirmation Order. These are final orders that bar any claim that was presented or could have been presented to the bankruptcy court. The Furst Plan's effort to resurrect its challenges to ML Manager's agency authority four years after confirmation of the Plan, this time in the context of ERISA, is barred by law of the case and res judicata.

**IT IS ORDERED GRANTING** ML Manager's motion to dismiss (doc. 9) and **DENYING** ML Manager's motion to strike (doc. 15).

**IT IS FURTHER ORDERED DENYING** Plaintiff's motion for partial withdrawal of the reference (doc. 13).

The clerk shall enter final judgment.

DATED this 2nd day of May, 2013.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge